**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin Leibel, et al., | No. CV-18-01743-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Buckeye, et al., | |
| Defendants. | |

## INTRODUCTION

This is a lawsuit brought on behalf of C.L., an autistic child who was 14 years old at the time of the events in question, against the City of Buckeye and three members of the Buckeye Police Department (collectively, "Defendants"). The claims stem from an incident in July 2017 in which one of the Defendants, Officer David Grossman ("Officer Grossman"), is alleged to have slammed C.L. against a tree, wrestled C.L. to the ground, and then pinned C.L. down while attempting to handcuff him. The complaint further alleges that C.L., who was screaming in agony during the incident, sustained serious injuries requiring surgery. There is no suggestion C.L. committed a crime before this encounter occurred. Instead, the complaint alleges that (1) Officer Grossman initially approached C.L., who was standing in a park, because he suspected C.L.'s hand movements might be indicative of drug use, (2) C.L. twice explained to Officer Grossman that he was simply "stimming" (*i.e.,* self-stimulating with a piece of string, which is a common technique used by individuals with autism to calm their nerves), and (3) Officer

Grossman proceeded to slam, wrestle, and pin C.L. despite this explanation.

On January 30, 2019, the Court issued a 21-page order in which it granted in part, and denied in part, Defendants' motion to dismiss (the "Order"). (Doc. 40.) Among other things, the Court concluded that Officer Grossman was not entitled to qualified immunity (at least at the motion-to-dismiss stage) as to Counts 1 and 2 of the complaint, which are claims under 42 U.S.C. § 1983 for false arrest and excessive force. The Court did, however, dismiss several other counts. The dismissal of those counts means that five counts now remaining pending: (1) Count 1, the § 1983 false arrest claim against Officer Grossman; (2) Count 2, the § 1983 excessive force claim against Officer Grossman; (3) Count 5, an Americans With Disabilities Act ("ADA") false arrest claim against the City; (4) Count 7, a state-law battery claim against Officer Grossman; and (5) Count 9, a state-law negligent training/supervision claim against all Defendants except Officer Grossman.

After the Order was issued, Officer Grossman filed a notice of appeal concerning the denial of qualified immunity. (Doc. 41.) Additionally, Defendants have filed a motion to stay until Officer Grossman's interlocutory appeal is resolved. (Doc. 42.) The stay request has two components: first, Officer Grossman seeks a stay as to the counts asserted against him; and second, Defendants collectively request a stay of the entire case. (*Id.*) Meanwhile, Plaintiffs have filed an opposition to the stay request (Doc. 47) and, separately, filed their own notice of appeal, which purports to challenge the portions of the Order dismissing certain other counts in the complaint (Doc. 44).

As explained below, Defendants' motion to stay will be granted in part and denied in part. Specifically, Officer Grossman's request for a stay as to Counts 1 and 2 will be granted because his interlocutory appeal is not frivolous. Although the Court continues to believe its decision to deny qualified immunity as to Counts 1 and 2 was correct—indeed, this order identifies several additional cases, with analogous facts, in which requests for qualified immunity were rejected—the arguments raised by Officer Grossman are not "wholly without merit" and "so baseless . . . that nothing can be said on the other side." However, Officer Grossman is not entitled to a stay as to Count 7, because it is a state-law

Grossman proceeded to slam, wrestle, and pin C.L. despite this explanation.

On January 30, 2019, the Court issued a 21-page order in which it granted in part, and denied in part, Defendants' motion to dismiss (the "Order"). (Doc. 40.) Among other things, the Court concluded that Officer Grossman was not entitled to qualified immunity (at least at the motion-to-dismiss stage) as to Counts 1 and 2 of the complaint, which are claims under 42 U.S.C. § 1983 for false arrest and excessive force. The Court did, however, dismiss several other counts. The dismissal of those counts means that five counts now remaining pending: (1) Count 1, the § 1983 false arrest claim against Officer Grossman; (2) Count 2, the § 1983 excessive force claim against Officer Grossman; (3) Count 5, an Americans With Disabilities Act ("ADA") false arrest claim against the City; (4) Count 7, a state-law battery claim against Officer Grossman; and (5) Count 9, a state-law negligent training/supervision claim against all Defendants except Officer Grossman.

After the Order was issued, Officer Grossman filed a notice of appeal concerning the denial of qualified immunity. (Doc. 41.) Additionally, Defendants have filed a motion to stay until Officer Grossman's interlocutory appeal is resolved. (Doc. 42.) The stay request has two components: first, Officer Grossman seeks a stay as to the counts asserted against him; and second, Defendants collectively request a stay of the entire case. (*Id.*) Meanwhile, Plaintiffs have filed an opposition to the stay request (Doc. 47) and, separately, filed their own notice of appeal, which purports to challenge the portions of the Order dismissing certain other counts in the complaint (Doc. 44).

As explained below, Defendants' motion to stay will be granted in part and denied in part. Specifically, Officer Grossman's request for a stay as to Counts 1 and 2 will be granted because his interlocutory appeal is not frivolous. Although the Court continues to believe its decision to deny qualified immunity as to Counts 1 and 2 was correct—indeed, this order identifies several additional cases, with analogous facts, in which requests for qualified immunity were rejected—the arguments raised by Officer Grossman are not "wholly without merit" and "so baseless . . . that nothing can be said on the other side." However, Officer Grossman is not entitled to a stay as to Count 7, because it is a state-law

claim not subject to a qualified-immunity defense, and Defendants' request to stay the entire case pending the resolution of Officer Grossman's appeal will be denied.

**DISCUSSION**

In their motion, Defendants request a stay of all proceedings pending the resolution of Officer Grossman's interlocutory appeal. First, Officer Grossman argues he is entitled to a stay of proceedings related to the issues he appealed. He explains that, when interlocutory review of an order is sought, "the district court is automatically divested of jurisdiction" over the particular issues involved in the appeal, unless the court certifies the appeal is frivolous. (Doc. 42 at 3.) He argues his appeal isn't frivolous. (*Id.*) Second, Defendants contend the Court should stay the remaining proceedings (not subject to the appeal) because the stay factors established in *Nken v. Holder*, 556 U.S. 418 (2009), weigh in their favor. (*Id.* at 11-14.)

In their response, Plaintiffs argue that Officer Grossman's appeal is frivolous and that the Court shouldn't stay the remaining proceedings because the *Nken* factors weigh in their favor. (Doc. 47.) Plaintiffs also obliquely note that they have filed a cross-appeal, appealing the dismissal of several of their causes of action. (*Id.* at 3 n.2).

In their reply, Defendants argue that, because Plaintiffs filed a notice of cross-appeal, the Court is divested of jurisdiction over all aspects of this case and therefore must stay all proceedings. (Doc. 48 at 1-4.)

I.  Stay As To Officer Grossman

    A.  **Legal Standard**

"[T]he filing of a notice of interlocutory appeal divests the district court of jurisdiction over the particular issues involved in that appeal." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001). However, if the district court finds that the interlocutory appeal is "frivolous," it "may certify, in writing, that defendants have forfeited their right to pretrial appeal, and may proceed with trial." *Chuman v. Wright*, 960 F.2d 104, 104 (9th Cir. 1992). A district court may deem an appeal frivolous only if it is "wholly without merit." *United States v. Kitsap Physicians Serv.*, 314

F.3d 995, 1003 n.3 (9th Cir. 2002) (citation omitted). In other words, a frivolous appeal is one that is "so baseless that it does not invoke appellate jurisdiction such as when the disposition is so plainly correct that nothing can be said on the other side." *Dagdagan v. City of Vallejo*, 682 F. Supp. 2d 1100, 1116 (E.D. Cal. 2010) (citation omitted).

B.  **Analysis**

Officer Grossman seeks interlocutory review of the Court's decision to deny him qualified immunity. The only two causes of action subject to qualified immunity are Count 1 (false arrest) and Count 2 (excessive force), both arising under 42 U.S.C. § 1983. Thus, the Court is automatically divested of jurisdiction over those claims unless it certifies that Officer Grossman's interlocutory appeal is frivolous.[1]

Although the Court stands by the Order and continues to believe it correctly denied Officer Grossman's motion to dismiss, his appeal is not frivolous. As Officer Grossman correctly states, denial of qualified immunity is only appropriate where an official's conduct violates "clearly established constitutional rights of which a reasonable officer would be aware 'in light of the specific context of the case.'" *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) (citation omitted). And Officer Grossman contends the cases cited in the Order wouldn't make a reasonable officer aware his conduct violated a clearly established constitutional right.

On the one hand, the Court acknowledges that the Order focused primarily on the merits of the constitutional violations asserted in Counts 1 and 2. In retrospect, it would have been preferable to provide a comparable level of analysis concerning the clearly-established prong of the qualified-immunity test (which the Court has attempted to supply

---

[1] Officer Grossman appears to argue the Court is also divested of jurisdiction over the other cause of action in which he is sued in his individual capacity—Count 7 (state-law battery). (*See* Doc. 42 at 10 [heading: "The Court Must Stay Proceedings As To Officer Grossman As A Result Of His Non-Frivolous Interlocutory Appeal Based On A Denial Of Qualified Immunity."].) This argument lacks merit. A district court isn't divested of jurisdiction "to address aspects of the case that are not the subject of the appeal." *United State v. Pitner*, 307 F.3d 1178, 1183 n.5 (9th Cir. 2002) (citation omitted). Additionally, defense counsel acknowledged, during the hearing on April 8, 2019, that he was unaware of any case law suggesting that a qualified immunity-related interlocutory appeal as to § 1983 causes of action would divest a district court of jurisdiction over factually related but distinct state-law causes of action.

below). Thus, the Court recognizes there could be reasonable disagreement about the correctness of its decision to deny qualified immunity. The Order is not "so plainly correct that nothing can be said on the other side," *Dagdagan,* 682 F. Supp. 2d at 1116, so Officer Grossman's appeal isn't frivolous.

On the other hand, it can't be overlooked that Officer Grossman's appeal arises from a ruling at the motion-to-dismiss stage, not at summary judgment. The Ninth Circuit has explained that, because "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making," a district court should conclude that the "plaintiffs are 'entitled to go forward' with their claims" if "the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right." *Keates*, 883 F.3d at 1234-35.

Here, as for the § 1983 false arrest claim in Count 1, the complaint alleges that C.L. was arrested because a police officer unreasonably interpreted the symptoms of his disability as evidence of criminal conduct. Multiple courts have denied qualified immunity under analogous circumstances. For example:

▪ In *Marzullo v. Onofrio*, 2016 WL 4250224 (D. Conn. 2016), the plaintiff was driving his car when he began to suffer an epileptic seizure, which caused him to crash into a wall. *Id.* at *1. When the police arrived at the scene, a passenger told them the plaintiff was having a seizure. *Id.* The police disregarded this information, demanded that the plaintiff produce his driver's license, and, when he didn't comply ("he was slumped over the steering wheel, unresponsive"), the police shot him with a Taser and threatened to arrest him. *Id.* at *2. Afterward, the plaintiff brought a § 1983 action alleging claims for, among other things, unlawful seizure and excessive force. *Id.* at *3. The officers moved for summary judgment on qualified-immunity grounds but the district court denied their motion in relevant part, holding that the officers could not "legitimately argue . . . that it would be reasonable for a police officer to use force against an individual, including shooting that individual in the neck with a Taser, under the circumstances testified to by [the passenger]." *Id.* at *4. In reaching this conclusion, the court noted that the officers

had no reason to suspect (unlike in other cases where qualified immunity was conferred) that the plaintiff was "engaged in dangerous criminal activity and . . . posed a real and imminent threat to the safety of the officers and any bystanders." *Id.* (citation omitted).

▪ In *Goines v. Valley Community Servs. Bd.*, 822 F.3d 159 (4th Cir. 2016), a man suffering from cerebellar ataxia—"a neurological condition that causes him difficulties with his speech, balance, and certain fine motor functions"— went to the police station to report that somebody was stealing his cable television services. *Id.* at 162-63. The police, concerned that Goines was undergoing a mental-health episode and posed a threat to others, arrested him and had him involuntarily committed for several days. *Id.* Afterward, Goines brought a § 1983 action. The district court granted the arresting officers' motion to dismiss, holding they were entitled to qualified immunity because it was objectively reasonable for the officers to arrest Goines under the circumstances (*id.* at 165), but the Fourth Circuit reversed and reinstated the § 1983 claim, holding that "the facts as alleged by Goines—the involuntary detention of a man with physical disabilities who exhibited no signs of mental illness and made no threats of harm—are sufficiently beyond the realm of probable cause that no reasonable police officer would find them adequate." *Id.* at 170.

▪ And in *Lum v. County of San Joaquin*, 2012 WL 1027667 (E.D. Cal. 2012), a young man with bipolar disorder showed up at a neighbor's house and acted bizarrely—he wasn't wearing shoes, looked confused, and said he was looking for a female whose name the neighbor didn't recognize. *Id.* at *1. As a result, the neighbor called 911. *Id.* When the police arrived, they found the young man standing in a nearby park with his dog. *Id.* He had vomit on his shirt and appeared confused and disoriented. *Id.* Although one of the officers understood that the young man was "having a mental health episode," they decided to arrest him and take him to jail. *Id.* He was detained overnight and then released. *Id.* at *2. However, he never returned home—upon his release from jail, he drowned in a nearby river. *Id.* The young man's family sued the arresting officers and asserted, among other things, a § 1983 claim for false arrest and a claim under the ADA. *Id.* The officers moved for summary judgment on the false-arrest claim on qualified immunity grounds, arguing

they reasonably believed the young man had committed the crime of public intoxication, but the district court denied their motion, explaining that "the court cannot conclude that it is uncontestable that a reasonable officer would have believed that probable cause existed for the arrest under the circumstances." *Id.* at \*5-6. In reaching this conclusion, the court emphasized that the officers had actual notice, before initiating the arrest, that the young man's symptoms were actually "signs of a person suffering from mental illness," not intoxication. *Id.*

These cases establish that a reasonable officer wouldn't have believed he had probable cause, reasonable suspicion, or indeed *any* reason to suspect C.L. had committed a crime. This is significant because an officer must have a "particularized and objective basis" to suspect legal wrongdoing before detaining a person. *United States v. Cortez*, 449 U.S. 411, 417-418 (1981). The law is clearly settled on this issue. *See, e.g., Flores v. JC Penney Corp.*, 256 Fed. App'x 979, 980-81 (9th Cir. 2007) (officer wasn't entitled to qualified immunity where he detained plaintiffs for shoplifting after plaintiffs "showed him a receipt for the merchandise in their possession"). Moreover, although *Marzullo*, *Goines*, and *Lum* each involved a full-blown arrest, whereas Officer Grossman argues his encounter with C.L. was a mere *Terry* stop that never transformed into an arrest, the law in existence at the time of the encounter undermines Officer Grossman's position on this point. *See, e.g., Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012) (holding, where police officer "threw [plaintiff] to the ground despite the fact [plaintiff] presented no threat to officer safety and had not engaged in any suspicious activity," that this "unreasonable level of force transform[ed] a *Terry* detention into an arrest requiring probable cause") (citations and internal quotation marks omitted).

Next, as for the § 1983 excessive force claim in Count 2, the complaint alleges that C.L. was subjected to excessive force because he was violently slammed against a tree, wrestled to the ground, and painfully pinned down for an extended period of time even though he hadn't engaged in any wrongful conduct. At the time of this incident, which occurred in 2017, the law was well established that "[w]here there is no need for force, *any*

force used is constitutionally unreasonable." *Moore v. Richmond Police Dep't*, 497 Fed. App'x 702, 708 (9th Cir. 2012) (citation omitted). It was also clearly established at the time that "an officer uses excessive force when he presses face-down a non-resisting and surrendered suspect longer than needed." *Ortiz ex rel. Ortiz v. Kazimer*, 811 F.3d 848, 852 (6th Cir. 2016). *See also Guy v. City of San Diego*, 608 F.3d 582, 589 (9th Cir. 2010) ("[I]f [an] officer[] go[es] too far by unnecessarily inflicting force and pain after a person is subdued, then the force . . . can still be considered excessive."). Finally, there was also a preexisting decision in which qualified immunity was denied under analogous facts. In *Cook v. Peters*, 604 Fed. App'x 663 (10th Cir. 2015), the court concluded a reasonable officer would have known his actions constituted excessive force, in violation of clearly established law, where a deputy sheriff carried out a forceful takedown of a teenager. Although the teenager was "resist[ing] arrest by pulling away from [the deputy sheriff]," the court held the forceful takedown was unreasonable because (1) the deputy sheriff "was 11 inches taller and 200 pounds heavier than [the teenager]"; (2) "[a]t the time of the takedown, [the teenager] posed little immediate threat to anyone"; and (3) "[the teenager's] crime (misdemeanor breach of the peace by use of profane language) was relatively minor." *Id.* at 664-665. The court reasoned that, although the plaintiff hadn't presented case law with similar facts, in light of the factors for excessive force established in *Graham v. Connor*, 490 U.S. 386 (1989), "any reasonable officer would have known that he or she could not arrest [the plaintiff] by a forceful takedown." *Cook*, 604 Fed. App'x at 668.[2]

II. <u>Stay As To Entire Case</u>

Defendants contend that, because Plaintiffs filed a notice of cross-appeal, they placed "all [p]arties and all aspects of the case under appellate jurisdiction" and thus

---

[2] *See also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 904 (6th Cir. 2004) (denying qualified immunity on § 1983 excessive force claim, where police used pepper spray to subdue a 32-year-old autistic man and then applied pressure to his back after he was restrained, in part because "[i]t cannot be forgotten that the police were confronting an individual whom they knew to be mentally ill or retarded, even though the Officers may not have known the full extent of Champion's autism and his unresponsiveness. The diminished capacity of an unarmed detainee must be taken into account when assessing the amount of force exerted.").

divested the Court of jurisdiction over the entire case. Alternatively, Defendants argue the Court should stay the remaining proceedings (not subject to Officer Grossman's appeal) because the factors established in *Nken* favor a stay.

As an initial matter, the Court disagrees that Plaintiffs' attempt to file a cross-appeal has any impact on its jurisdiction. Although Officer Grossman's notice of appeal was permissible, because a defendant who unsuccessfully asserts a qualified-immunity defense is entitled to interlocutory review of the challenged ruling, Plaintiffs were not entitled to file their own notice of appeal seeking interlocutory review of the portions of the Order dismissing some of their other claims. *See, e.g., George v. Morris*, 736 F.3d 829, 839-40 (9th Cir. 2013) (although a defendant is entitled to seek interlocutory review of a pretrial order denying qualified immunity, the plaintiff is generally not allowed to pursue a cross-appeal seeking interlocutory review of other portions of the order); *Lue v. Moore*, 43 F.3d 1203, 1206 (8th Cir. 1994) ("The qualified immunity exception that allowed us to address the defendants' interlocutory appeal does not permit us to hear [the plaintiff's] unrelated cross-appeal at this time."). A premature notice of appeal does not divest a district court of jurisdiction. *Mondrow v. Fountain House*, 867 F.2d 798, 800 (3d Cir. 1989) ("Unlike a timely notice of appeal, a premature notice of appeal does not divest the district court of jurisdiction."); *Pengelly v. Hawaii*, 2017 WL 5617064, *2 (D. Hawai'i 2017) ("A premature appeal does not divest this court of jurisdiction.") (citing *Stevenson v. Grentec, Inc.*, 652 F.2d 20, 22 (9th Cir. 1981)).[3]

A. **Legal Standard**

"A stay is not a matter of right, even if irreparable injury might otherwise result. . . . It is instead an exercise of judicial discretion, [that] is dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433 (citations and internal quotation marks omitted). "Judicial discretion in exercising a stay is to be guided by the following legal principles, as distilled into a four factor analysis in *Nken*: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2)

---

[3] During the hearing on April 8, 2019, Plaintiffs' counsel conceded the cross-appeal was premature. Plaintiffs have now withdrawn it. (Doc. 50.)

- 9 -

whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) (citation omitted). The first two of these factors "are the most critical." *Nken*, 556 U.S. at 434. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1246 (9th Cir. 2018) (citation omitted).

    B.    **Analysis**

        1.    *Strong Showing*

Under the first *Nken* factor, "a petitioner must show, at a minimum, that she has a substantial case for relief on the merits" but doesn't need to show "that success is more likely than not." *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011).

Defendants haven't satisfied this factor here. As discussed in Part A above, although Officer Grossman's appeal isn't frivolous, he hasn't presented a substantial case for reversal.

        2.    *Irreparable Injury To Stay Applicant*

Under the second *Nken* factor, an applicant must show "that there is a probability of irreparable injury if the stay is not granted." *Lair*, 697 F.3d at 1214. It's not enough to show "some possibility of irreparable injury." *Id.* (citation omitted).

Defendants argue that if a stay isn't granted, they will be subjected to duplicative discovery, having to conduct two trials arising from the same common operative facts, and "significant expense." (Doc. 42 at 13.)

The Court disagrees and concludes this factor weighs against granting a stay. As an initial matter, Defendants' argument that they will be subjected to duplicative discovery is incorrect—no Defendant (except for Officer Grossman) will be subjected to any more or less discovery based on how Officer Grossman's appeal is resolved. Count 5 (wrongful arrest under the ADA) and Count 9 (state-law negligent training/supervision) are asserted against the City. The City will be required to engage in discovery related to Officer

Grossman's interaction with C.L. regardless of whether the Ninth Circuit determines Officer Grossman violated clearly established law. The same is true for Chief Hall and Lieutenant Arlak, against whom Count 9 is asserted.

Moreover, even if Defendants were correct that the denial of a stay would cause them to engage in duplicative discovery, such harm isn't irreparable. *Mohamed v. Uber Techs.,* 115 F. Supp. 3d 1024, 1032-33 (N.D. Cal. 2015) ("[N]early all courts 'have concluded that incurring litigation expenses does not amount to an irreparable harm.'") (citations omitted); *DBD Credit Funding LLC v. Silicon Labs., Inc.*, 2016 WL 6893882, *12 (N.D. Cal. 2016) (same).

Finally, during the hearing on April 8, 2019, Plaintiffs' counsel stated that, although Plaintiffs are interested in proceeding with discovery right now as to the remaining Defendants, they do not wish to hold two trials in this matter and thus may consent to a future stay. This clarification reduces the Court's concern over the potential for duplicative proceedings.

### 3. *Substantial Injury to Other Parties Interested in the Proceeding*

The Court concludes this factor is neutral. On the one hand, although "[d]elay can certainly constitute 'a substantial injury to the plaintiff,'" where a plaintiff only identifies general concerns, rather than specific concerns about a stay (such as risk of lost evidence), courts are less likely to find the injury is substantial. *Richards v. Ernst & Young LLP*, 2012 WL 92738, *4 (N.D. Cal. 2012) (citation omitted). Here, Plaintiffs have not attempted to articulate a specific injury that will flow from delay. On the other hand, the Court recognizes that the delay Plaintiffs will suffer until Officer Grossman's appeal is resolved—which could be nearly two years[4]—is still an injury.

### 4. *Public Interest*

This factor is also neutral. Granting a stay would promote judicial economy, which is a legitimate public interest. *Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 330

---

[4] In the Ninth Circuit, oral argument isn't held until "approximately 12-20 months from the notice of appeal date" in most civil cases. United States Courts for the Ninth Circuit, *Frequently Asked Questions*, https://www.ca9.uscourts.gov/content/faq.php.

- 11 -

(9th Cir. 1995) ("The public interests served include . . . preserving judicial economy.") (citation omitted). On the other hand, denying a stay would promote the expeditious resolution of Plaintiffs' still-viable claims, which is also a legitimate public interest. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226-27 (9th Cir. 2006) (noting, in the context of deciding whether to dismiss a case for failure to comply with a court order, that the public has an interest in "expeditious resolution of litigation").

Accordingly, **IT IS ORDERED** that:

(1) Defendants' motion to stay (Doc. 42) is **granted in part and denied in part**;

(2) Officer Grossman's interlocutory appeal isn't frivolous, so the Court is divested of jurisdiction over Count 1 (false arrest) and Count 2 (excessive force) while that appeal remains pending; and

(3) The Court retains jurisdiction over the remaining claims and declines to issue a *Nken* stay as to those claims.

Dated this 9th day of April, 2019.

Dominic W. Lanza
United States District Judge