**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin Leibel, et al., | No. CV-18-01743-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Buckeye, et al., | |
| Defendants. | |

Pending before the Court is C.L.'s[1] motion for leave to file a first amended complaint ("FAC"). (Doc. 77.) For the following reasons, the Court grants C.L.'s motion.

## BACKGROUND

On June 6, 2018, C.L.—a 14-year-old autistic boy—filed a complaint against the City of Buckeye, the Buckeye Police Department ("BPD"), and three members of the BPD (collectively, "Defendants") (Doc. 1).[2] The complaint arises from a July 2017 incident in which Defendant Officer David Grossman is alleged to have slammed C.L. against a tree, wrestled C.L. to the ground, and then pinned C.L. down while attempting to handcuff him. Officer Grossman had approached C.L. because he witnessed C.L. "stimming"—self-stimulating with a piece of string, which is a common technique used by individuals with autism to calm their nerves—which he mistook for illegal drug use. There is no suggestion

---

[1] Because Plaintiffs Kevin and Danielle Leibel bring this action in their capacities as guardians ad litem of their 14-year old son, C.L, the Court will refer to Plaintiffs as "C.L" for ease of reference.

[2] The parties have since stipulated to the dismissal of the BPD from this action. (Doc. 20.)

1 C.L. committed a crime before this encounter occurred.

On December 10, 2018, the Court entered a Rule 16 scheduling order that established February 8, 2019 as the deadline for amending pleadings. (Doc. 35 ¶ 2.)

On January 30, 2019, the Court issued an order dismissing several counts of the complaint, including Count III, which asserted a claim failure to train and/or supervise. (Doc. 40.) C.L. had alleged the City of Buckeye failed to "enforce proper and adequate training and supervision on interacting and dealing with individuals with disabilities." (Doc. 7 ¶ 125.) The Court dismissed that claim because C.L. hadn't alleged "a pre-existing pattern of violations" sufficient to conclude that the City engaged in "deliberate indifference for purposes of failure to train." (Doc. 40 at 11-12.)

On June 27, 2019, C.L. conducted a Rule 30(b)(6) deposition of the City of Buckeye, with the City designating Assistant Police Chief Robert Sanders as its representative. (Doc. 77-3.) During that deposition, Sanders arguably testified that he had knowledge, predating the incident with C.L., that autistic individuals were at a higher risk than other citizens of being involved in encounters with police officers and that these encounters often resulted in the autistic individual's injury or death. (Doc. 77-1, citing Doc. 77-3 at 2, 15, 25-26.) Further, Sanders testified that he had watched a training video recommending that officers receive additional training to adequately raise awareness about autistic individuals. (Doc. 77-1 at 3, citing 77-3 at 19.) He also arguably testified that the BPD had sufficient time to train its officers on those issues but didn't. (Doc. 77-1 at 3-4, citing 77-3 at 19, 72.)

On August 14, 2019, C.L. filed a motion for leave to file a FAC. (Doc. 77.) The proposed FAC seeks to incorporate the newly-discovered facts elicited during the Rule 30(b)(6) deposition in order to resuscitate the failure to train/supervise claim. (Doc. 77-2 ¶¶ 16-42, 149-159.)

**DISCUSSION**

C.L. moves for leave to amend under Rule 15's liberal amendment standard. (Doc. 77-1.) Defendants, on the other hand, argue C.L. must first show "good cause" under Rule

16 because the deadline to amend pleadings has passed. (Doc. 78 at 2-3.)

The Court agrees with Defendants that C.L. must first satisfy Rule 16 before turning to Rule 15's liberal amendment standard. The Court entered a Rule 16 scheduling order on December 10, 2018. (Doc. 35.) That scheduling order established a February 8, 2019 deadline for amending pleadings—a deadline that has already expired. After a deadline established in a Rule 16 scheduling order expires, a party seeking to amend its pleading must satisfy Rule 16's standards. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).

Because those standards apply here, C.L. must first show "good cause" to amend his complaint. Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment . . . . [C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief . . . . [T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609.

I. Good Cause

C.L. argues that good cause exists because he is seeking amendment based upon new facts discovered during the 30(b)(6) deposition of the City of Buckeye. (Doc. 89 at 2-3.) Further, C.L. argues he moved for leave to amend "soon after obtaining and reviewing the transcript of Sanders's deposition." (*Id.*)[3]

Although "[d]iscovery of new information after the deadline for amended pleadings passes is a potential basis for good cause to modify the scheduling order," "[a] party must also show diligence in seeking amendment of the scheduling order." *Story v. Midland Funding LLC*, 2016 WL 5868077, *2 (D. Or. 2016). To determine whether a party exercised diligence, courts typically consider the amount of time between the discovery of the new information and when the party requested leave to amend. *Zivkovic v. S. California*

---

[3] Defendants contend that C.L. didn't argue, in his motion, that he satisfied the good cause, so the Court should reject any arguments made in his reply regarding this standard. (Doc. 78 at 3.) Although C.L. didn't specifically use the words "good cause" in the motion, he still proffered reasons why the Court would be justified in granting the motion. Therefore, the Court will consider C.L.'s arguments.

- 3 -

*Edison Co.*, 302 F.3d 1080, 1087-88 (9th Cir. 2002).

On June 27, 2019, C.L. conducted the Rule 30(b)(6) deposition of the City, during which he discovered the new information that he seeks to incorporate into his proposed FAC. (Doc. 77-1 at 2-4.) C.L. moved to amend the complaint on August 14, 2019—just shy of seven weeks after discovering the new facts. (Doc. 77-1.)

"Ideally, a party will move to amend within weeks of learning new information." *Story*, 2016 WL 5868077 at *2-3. *See also Navarro v. Eskanos & Adler*, 2006 WL 3533039, *2 (N.D. Cal. 2006) ("A two-week delay does not constitute a failure in diligence."). However, a longer delay "can still be consistent with diligence, depending on the circumstances of the delay." *Story*, 2016 WL 5868077 at *2. For example, where plaintiffs presented sufficient justification, courts have held that plaintiffs were diligent after waiting more than a month to amend. *See e.g., id.* at 3 (determining plaintiff was diligent despite a three-month delay because, during the three months, plaintiff engaged in "ongoing settlement negotiations and s[ought] Defendants' stipulation to [the] amendment"); *Aldan v. World Corp.*, 267 F.R.D. 346, 358 (D. N. Mar. I. 2010) (holding that plaintiff was diligent where there was a delay of a month-and-a-half between discovery of the new information and the motion to amend because that period "included the holiday season").

The Court concludes that, although it presents a close call, the seven-week delay between C.L.'s discovery of new facts and his motion to amend constitutes diligence. C.L. didn't just add a few additional facts to his proposed FAC—he added 25 detailed paragraphs of facts. (Doc. 77-2 ¶¶ 16-41.) Moreover, rather than immediately moving to amend based on his recollection of Sanders's testimony, C.L. moved to amend "after obtaining and reviewing the transcript of Sanders's deposition." (Doc. 77-1 at 6.) Obtaining the deposition transcript accounts for some of the delay, because procuring a deposition transcript can, in some circumstances, take up to 30 days. Therefore, in light of C.L. having to obtain the deposition transcript before seeking leave to amend, the seven-week delay is consistent with diligence.

II. <u>Rule 15</u>

"Rule 15 advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* Thus, the Court shouldn't deny leave to amend unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Of these factors, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052.

Even though "[p]rejudice is the 'touchstone of the inquiry under rule 15(a),'" *id.* (citation omitted), Defendants only contest the propriety of C.L.'s amendment request on bad-faith and futility grounds. (Doc. 78 at 3 n.2 ["The City of Buckeye Defendants focus on futility and bad faith, with no argument on undue prejudice or undue delay."]).

First, Defendants argue C.L. seeks the amendment in bad faith because C.L. has "'cherry-picked' facts from the Rule 30(b)(6) deposition, ignored the policy and training exhibits covered in the deposition, and . . . skewed the facts to make more of the alleged claim than exists." (Doc. 78 at 15.)

This doesn't constitute bad faith. "A motion to amend is made in bad faith where there is 'evidence in the record which would indicate a wrongful motive' on the part of the litigant requesting leave to amend." *Nutrition Distribution, LLC v. Enhanced Athlete, Inc.*, 2019 WL 1429549, *2 (E.D. Cal. 2019) (quoting *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987)). Here, C.L.'s only motive in seeking leave to amend is the legitimate motive of trying to identify another valid claim for relief. Although Defendants have advanced a variety of reasons why the deposition testimony may not actually provide a solid foundation for a failure-to-train claim, this is not the same thing as showing that C.L. had a bad-faith motive for seeking the amendment.

Second, Defendants argue that C.L.'s proposed amendments are futile because the proposed FAC still fails to state a plausible claim for failure to train or supervise. (Doc.

78 at 4.) Although it's true that "the test for futility is whether the amendment can survive a motion to dismiss under Rule 12(b)(6)," *Fulton v. Advantage Sales & Mktg., LLC*, 2012 WL 5182805, *3 (D. Or. 2012), "[o]rdinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed," *Fair Hous. Council of Cent. California, Inc. v. Nunez*, 2012 WL 217479, *4 (E.D. Cal. 2012). *See also Green Valley Corp. v. Caldo Oil Co.*, 2011 WL 1465883, *6 (N.D. Cal. 2011) (noting "the general preference against denying a motion for leave to amend based on futility").

It makes the most sense, therefore, to grant C.L. leave to file the FAC and then consider any motions to dismiss after it has been filed. *Williams v. Keybank Nat'l Ass'n*, 2016 WL 7107765, *3 (D. Or. 2016) (granting leave to amend and "find[ing] that it would be preferable to consider the futility arguments in the context of a motion to dismiss for failure to state a claim, whereby the parties could fully brief the sufficiency of plaintiffs' allegations under the appropriate briefing schedule, through a procedural mechanism that would allow optimal focus on those arguments (instead of their being first raised only in opposition briefing)"); *Bentley v. Arizona Dep't of Child Safety*, 2018 WL 8262769, *2 (D. Ariz. 2018) (finding that defendants' "arguments to the sufficiency of the proposed amendment, even if merited, remain better left for full briefing on a motion to dismiss").

Accordingly, **IT IS ORDERED** that C.L.'s motion for leave to file a FAC (Doc. 77) is **granted**.

**IT IS FURTHER ORDERED** that C.L. must, consistent with LRCiv 15.1(a), file and serve the FAC within 14 days of this Order.

Dated this 27th day of September, 2019.

Dominic W. Lanza
United States District Judge