**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin Leibel, et al., | No. CV-18-01743-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Buckeye, et al., | |
| Defendants. | |

Pending before the Court is a motion to dismiss portions of the first amended complaint ("FAC"). (Doc. 95.) For the following reasons, the motion will be granted in part and denied in part.

## BACKGROUND

This lawsuit arises from a July 2017 encounter between Officer David Grossman of the Buckeye Police Department ("BPD") and C.L., a 14-year-old autistic boy. C.L. alleges that Officer Grossman slammed him against a tree, wrestled him to the ground, and then pinned him down while attempting to handcuff him. Officer Grossman initiated the encounter because he witnessed C.L. "stimming"—self-stimulating with a piece of string, which is a common technique used by individuals with autism to calm their nerves—and mistook the stimming for illegal drug use. There is no suggestion C.L. committed a crime before the encounter occurred.

In June 2018, C.L. filed the initial complaint. (Doc. 1.)[1] It asserted a variety of

---
[1] The plaintiffs are actually C.L.'s parents, who are acting as his guardians ad litem (Doc. 20), but for ease of reference the Court will refer to the plaintiffs as C.L.

federal and state-law claims against Officer Grossman, certain other BPD officials, and the City of Buckeye ("the City") (collectively, "Defendants"). (*Id.*)[2]

On January 30, 2019, the Court issued an order that granted in part, and denied in part, Defendants' motion to dismiss. (Doc. 40.) One of the counts Defendants sought to dismiss was Count Three, which asserted a *Monell* claim[3] against the City for failing to "enforce proper and adequate training and supervision on interacting and dealing with individuals with disabilities." (Doc. 7 ¶ 125.) The Court dismissed Count Three because the complaint didn't allege "a pre-existing pattern of violations" sufficient to show the City had engaged in "deliberate indifference for purposes of failure to train." (Doc. 40 at 11-12.) In contrast, the Court denied Defendants' motion to dismiss Count Nine, which asserted a state-law claim for negligent supervision and training against the City and two BPD officials, because the sole dismissal argument proffered by Defendants—that Officer Grossman acted properly, so there could be no negligence in training or supervising him—was unavailing. (*Id.* at 20-21, citing Doc. 16 at 17.)

On June 27, 2019, C.L. conducted a Rule 30(b)(6) deposition of the City, which designated Assistant Police Chief Robert Sanders as its representative. (Doc. 77-3.) C.L. contends that Sanders made various statements during this deposition that show the City had knowledge, well before the incident in July 2017, that autistic individuals are at a higher risk than other citizens of being involved in encounters with police officers and that such encounters often result in the autistic individual's injury or death. (Doc. 77-1, citing Doc. 77-3 at 2, 15, 25-26.)

On August 14, 2019, C.L. filed a motion for leave to file the FAC. (Doc. 77.) Specifically, C.L. sought permission to reassert Count Three (the dismissed failure-to-train claim against the City) based upon the new information elicited during the Sanders

---

[2] The complaint also asserted claims against the BPD, but the parties later stipulated to the dismissal of the BPD from this action. (Doc. 20.)

[3] "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, a municipality can be liable under § 1983 when "action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 690.

deposition. (Doc. 77-2 ¶¶ 16-42, 149-159.)

On September 27, 2019, the Court granted C.L.'s motion. (Doc. 91.) However, the Court made clear that it wasn't making a definitive judgment about the sufficiency of Count Three—it simply wished to have Defendants raise their challenge to that claim in the context of a motion to dismiss. (*Id.* at 6.)

On October 11, 2019, C.L. filed the FAC. (Doc. 92.)

On October 25, 2019, Defendants filed a partial motion to dismiss. (Doc. 95.)

On November 8, 2019, C.L. filed a response. (Doc. 96.)

On November 15, 2019, Defendants filed a reply. (Doc. 97.)[4]

**DISCUSSION**

I. Preliminary Matters

C.L. argues the Court should strike or summarily deny Defendants' motion because (1) Defendants violated General Order 17-08 by failing to file an answer to the FAC and (2) Defendants violated Local Rule 12.1(c) by failing to certify they'd met and conferred with his counsel before filing the motion. (Doc. 96 at 4-5.)

Neither argument is availing. First, although a previous version of General Order 17-08 required defendants to file an answer within the time allowed by Rule 12 even if they intended to file a motion to dismiss, General Order 17-08 was amended in November 2018 to eliminate that requirement. Second, although the Court is ordinarily a stickler for compliance with Local Rule 12.1(c), the unusual circumstances of this case explain why Defendants may have understandably concluded that compliance wasn't required here—C.L. had ample notice of Defendants' grounds for seeking dismissal because the same issues were discussed during the briefing on C.L's motion to amend.

II. Count Three

A. **Pattern Of Similar Violations**

Under *Connick v. Thompson*, 563 U.S. 51 (2011), it is "ordinarily necessary" for a

---

[4] Defendants included a request for oral argument in the caption of their reply (Doc. 97 at 1), but the Court will deny that request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

plaintiff seeking to assert a § 1983 claim against a municipality premised on a failure-to-train theory to allege "[a] pattern of similar constitutional violations by untrained employees." *Id.* at 62. Defendants argue the FAC fails to satisfy this requirement because it "does not contain any allegations that the City . . . had experienced prior constitutional rights violations of disabled individuals, or any other pattern of violations involving the disabled, much less persons with autism." (Doc. 95 at 1-2.) C.L. disagrees, arguing that the new factual allegations in the FAC, derived from the Sanders deposition, show that the City had "specific notice and knowledge that members of the autistic community were at a significantly higher risk than other citizens of being involved in encounters with police officers, and that these encounters often resulted in death or serious injury to the disabled person." (Doc. 96 at 2-3.) According to C.L., the City (through Sanders) acquired this knowledge by reviewing Google alerts, Police Executive Research Forum updates, training videos, headlines, and news stories. (*Id.* at 6-8.)

Defendants have the better side of this argument. The FAC does not allege that any of the Google alerts, forum updates, videos, news stories, or headlines at issue described prior incidents in which a member of the *Buckeye Police Department* violated the rights of a disabled individual or an individual with autism. (Doc. 92 ¶¶ 16-31, 151.) Instead, these materials apparently described incidents involving other unspecified police departments. This is insufficient to show the requisite pattern under *Connick*. *See, e.g., Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (affirming dismissal of failure-to-train claim against municipal defendant because the plaintiff did "not allege a pattern of sexual assaults *perpetrated by Los Angeles sheriff's deputies* before her alleged assault in 2011") (emphasis added); *Jewell v. Ridley Tp.,* 497 Fed. App'x 182, 186 (3d Cir. 2012) (affirming rejection of failure-to-train claim against city because "[w]ithout a pattern of constitutional violations *during police pursuits involving the Ridley police*, we cannot conclude that Ridley exhibited deliberate indifference in its efforts to train its officers when it provided enough training for its officers to be generally familiar with the pursuit policy") (emphasis added). After all, incidents involving other police departments would not have placed the

City on notice that its training program was inadequate. And "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

B. **Single-Incident Liability**

In *Connick*, the Supreme Court also recognized "the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." 563 U.S. at 64. As an illustration of a situation where such 'single-incident' liability" might be available, the Court provided "the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Id.* at 63. The Court emphasized, however, that this "hypothetical assumes that the armed police officers have no knowledge at all of the constitutional limits on the use of deadly force." *Id.* at 67. Thus, the Court suggested that single-incident liability would not be available against a city that provided general training to its employees and was accused of failing to provide training about a "particular [subtopic] or the specific scenario related to the violation in [the] case," because "[t]hat sort of nuance simply cannot support an inference of deliberate indifference." *Id.*

Defendants argue that single-incident liability is unavailable here because the FAC acknowledges that the City provided crisis intervention training to its officers and further acknowledges that the City provided at least some training to Officer Grossman concerning the dangers facing autistic members of the community. (Doc. 95 at 10.) Defendants also identify an array of other cases in which courts rejected failure-to-train claims premised on single incidents. (*Id.* at 8-10.) In response, C.L. argues that the Google alerts and other materials Sanders viewed made it "highly predictable" that the City's continued "fail[ure] to train its officers on interacting with disabled individuals could lead to the violation of an autistic citizen's rights." (Doc. 96 at 9.) C.L. also identifies his own list of cases in which

- 5 -

courts allowed failure-to-train claims to proceed based upon a single incident and seeks to distinguish the cases cited by Defendants. (*Id.* at 10-13.)

The Court agrees with Defendants that this case does not fall within the "rare" and "narrow" band of cases in which failure-to-train liability could be imposed against a city despite the absence of a pattern of earlier violations. The FAC does not suggest the City failed to provide *any* use-of-force training to its officers. The FAC also acknowledges the City provided crisis intervention training to its officers and separately provided additional materials that "touch[ed] upon autism specifically." (Doc. 92 ¶¶ 35, 37.) Although the FAC questions the sufficiency of these training efforts and contends the City should have provided more meaningful, specific training concerning autism, *Connick* makes clear that a plaintiff cannot establish single-incident liability merely by showing that a city's training efforts failed to address "the specific scenario related to the violation in [the] case." 563 U.S. at 67. "That sort of nuance simply cannot support an inference of deliberate indifference." *Id.*

Thus, Count Three of the FAC will be dismissed.[5]

III. <u>Undisputed Matters</u>

Defendants also move to dismiss (1) the portions of the FAC suggesting that the BPD remains a defendant and (2) Count Four of the FAC, to the extent it seeks to assert an ADA claim against Officer Grossman. (Doc. 95 at 12.) In response, C.L. acknowledges that he "is not asserting claims against the BPD and any allegations against the BPD contained in [the FAC] should be construed as directed toward [the City]" and further acknowledges that Officer Grossman's "inclusion in [the ADA claim] was inadvertent." (Doc. 96 at 16.)

Given these clarifications, there is nothing further for the Court to do. The BPD has already been dismissed from the case (Doc. 20) and the Court has already dismissed Officer Grossman as a defendant in the ADA count (Doc. 40 at 14).

---

[5] This conclusion makes it unnecessary to resolve Defendants' alternative claim that Count Three should be dismissed because it fails to allege a plausible causal connection between the alleged lack of training and C.L.'s injury. (Doc. 95 at 10-11.)

## IV. Count Six

As noted, the Court previously denied Defendants' motion to dismiss C.L.'s state-law claim for negligent training and supervision—which was Count Nine of the original complaint but has been renumbered as Count Six of the FAC—because the sole dismissal argument proffered by Defendants lacked merit. (Doc. 40 at 20-21.)

Defendants now identify additional reasons why that claim should be dismissed. (Doc. 95 at 13-17.) The Court will decline to consider those arguments. Rule 12(g)(2) of the Federal Rules of Civil Procedure provides that, except in circumstances not present here, "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." That is exactly the scenario here—Defendants are attempting to raise dismissal arguments they could have raised in their Rule 12(b)(6) motion to dismiss the original complaint. *See generally Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 247 F. Supp. 2d 987, 999 (N.D. Ill. 2002) ("Rule 12(g) generally precludes a defendant from bringing successive motions to dismiss raising arguments that the defendant failed to raise at the first available opportunity."); *Fed. Agr. Mortgage Corp. v. It's A Jungle Out There, Inc.*, 2005 WL 3325051, *5 (N.D. Cal. 2005) ("[W]here the complaint is amended after the defendant has filed a Rule 12(b) motion, the defendant may not thereafter file a second Rule 12(b) motion asserting objections or defenses that could have been asserted in the first motion.").[6]

Accordingly, **IT IS ORDERED** that Defendants' partial motion to dismiss (Doc. 95) is **granted in part and denied in part**.

Dated this 31th day of January, 2020.

_____
Dominic W. Lanza
United States District Judge

---

[6] Count Six of the FAC is largely unchanged from Count Nine of the original complaint. (Doc. 77-2 at 26-27.)

- 7 -